SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**EQR-LPC Urban Renewal North Pier, LLC v. City of Jersey City (A-16-16) (078268)**

**(NOTE: The Court did not write a plenary opinion in this case. Instead, the Court affirms the judgment of the Appellate Division substantially for the reasons expressed in the per curiam opinion published at ___ N.J. Super. ___ (App. Div. 2016).)**

**Argued October 11, 2017 -- Decided November 15, 2017**

**PER CURIAM**

In this appeal, the Court considers whether the 2000 and 2001 financial agreements between plaintiffs EQR-Lincoln Urban Renewal Jersey City, LLC (EQR-Lincoln), and EQR-LPC Urban Renewal North Pier, LLC (EQR-North Pier), and defendant, the City of Jersey City (City), incorporate 2003 amendments to the Long Term Tax Exemption (LTTE) Law, N.J.S.A. 40A:20-1 to -22.

Plaintiffs are limited liability companies that qualify as urban renewal entities under the LTTE Law. Each plaintiff entered into a separate financial agreement with the City to obtain a property tax exemption relating to an urban renewal project involving construction of an apartment building. Among other things, the financial agreements require plaintiffs to pay the City an "annual service charge" in lieu of property taxes.

Both financial agreements provide that, "[i]n consideration of the tax exemption, the Entity shall make payment to the City of an amount equal to the greater of: the Minimum Annual Service Charge or an Annual Service Charge equal to 15% of the Annual Gross Revenue in the first full year after the Lease Up Period." In addition, both agreements require plaintiffs to pay any excess net profits to defendant. And both include "General Definitions" sections that define the term "Law," as follows: "Law shall refer to the [LTTE Law], as amended and supplemented; Executive Order of the Mayor S-039, . . . as it may be amended and supplemented; [and the City Ordinance(s)], which authorized the execution of this Agreement and all other relevant Federal, State, or City statutes, ordinances, resolutions, rules and regulations." (emphasis added). The financial agreements state that "[i]n the event of conflict between the Agreement and the Law, the Law shall govern and prevail."

In early 2014, plaintiffs submitted an Auditor's Report and excess-net-profits calculation to the City for 2013. Plaintiffs calculated their allowable profits using the 12% allowable profit rate provided in the 2003 amendments to the LTTE Law, rather than the rate provided in the version of the statute in effect at the time of each financial agreement. Using the amended rate, plaintiffs did not have excess net profits and thus did not owe any excess-net-profit payment to the City.

After receiving plaintiffs' excess-profits calculation, the City sent a default notice demanding payment of $665,575.25 in excess profits for 2013. EQR-Lincoln paid the disputed excess-net-profits amount for 2013 "under protest," with full reservation of rights. This followed a similar dispute and payment "under protest" of excess profits for years prior to 2013, in the amount of $2,266,345. The record indicates that from 2006 to 2012, excess profit had been generated by each plaintiff; however, instead of paying the excess profit to the City each year, each plaintiff paid the excess profit over to a related entity.

Plaintiffs filed a two-count complaint seeking a declaratory judgment against the City. Count I seeks a judgment declaring that the applicable law and financial agreements permit plaintiffs to pay "excess rent" to affiliated entities under certain ground leases, with the effect of eliminating the "excess net profit" that plaintiffs might otherwise owe to the City. Count II seeks a judgment declaring that the parties' financial agreements incorporate future changes to applicable law, such that plaintiffs may calculate their "allowable profit rate" in accordance with the 2003 amendments to the LTTE Law.

The trial judge granted partial summary judgment on Count II. The judge reasoned that the express language of the contract, "as amended and supplemented," demonstrates that the parties agreed to incorporate future amendments to the LTTE Law in their financial agreements. The trial judge further concluded that the 2003 amendments to the LTTE Law applied to the financial agreements, and that legislative history supported his conclusions. The trial judge denied the City's motion for reconsideration.

The Appellate Division granted the City's motion for leave to appeal. The City asserted that the LTTE Law did not sanction plaintiffs' unilateral changes to their financial agreements. The panel agreed and therefore reversed the entry of summary judgment and remanded the matter. ___ N.J. Super. ___, ___ (2016) (slip op. at 2).

The panel "beg[a]n with a review of the pertinent changes to the LTTE Law." Id. at 10. "In 2000, N.J.S.A. 40A:20-3(b) (emphasis added) read: "'Allowable profit rate" means the percentage per annum arrived at by adding 1 1/4% to the annual interest percentage rate payable on the entity's initial permanent mortgage financing.'" Ibid. "The Legislature amended the LTTE Law effective July 9, 2003, so that it currently" defines "allowable profit rate" as "the greater of 12% or the percentage per annum arrived at by adding 1 1/4% to the annual interest percentage rate payable on the entity's initial permanent mortgage financing." Id. at 10-11 (quoting N.J.S.A. 40A:20-3(b) (emphasis added)).

The panel then turned to "the express language embodied in the contracts" and found that it "does not support the motion judge's interpretation" because "the section of the contracts that defines the profit calculation . . . is essentially a word-for-word recitation of the LTTE Law, N.J.S.A. 40A:20-3(b), as it existed in 2000 before the 2003 amendments." Id. at 13. "Repeating this language, as opposed to simply incorporating the LTTE Law by reference," the panel reasoned, "indicates the parties' intent that this calculation method would control." Ibid. The panel also determined that "the only reasonable interpretation of the 'as amended and supplemented' language refers to amendments and supplements made to the LTTE Law after its initial adoption in 1991 that had become effective on or before the date the financial agreements were executed." Id. at 14. "In defining the 'Law,'" the panel noted, "the financial agreements state that this refers to: 'the Long Term Tax Exemption Law, as amended and supplemented'" but to "'Executive Order of the Mayor S-039, relating to term tax exemption, as it may be amended and supplemented.'" Ibid. According to the panel, "[t]his different wording indicates that the Executive Order of the Mayor may be amended and supplemented, whereas the LTTE Law has already been amended and supplemented." Id. at 14-15. The panel also observed that it is "contrary to fundamental public financing concepts for the Legislature to adjust the terms of municipal tax abatement contracts after the fact." Id. at 15. Noting that, "[w]hen the LTTE Law was amended in 2003, it ratified and validated all existing financial agreements, including 'the structure and methods used to calculate excess profits,'" ibid. (quoting N.J.S.A. 40A:20-22), the panel interpreted that "to mean that the Legislature did not intend to disrupt the financial terms of existing contracts," id. at 15-16. Finally, the panel noted that the City's contention that "plaintiffs were violating the financial agreements by funneling their excess profits to an affiliate as 'excess rent' . . . was not addressed in the trial court's decision under review, and hence was not within the scope of [the] order granting leave to appeal." Id. at 16.

The Court granted plaintiffs' motion for leave to appeal. 228 N.J. 270, 270 (2016).

**HELD:** The judgment of the Appellate Division is affirmed substantially for the reasons expressed in the per curiam opinion.

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON join in this opinion. JUSTICE TIMPONE did not participate.**

EQR-LPC URBAN RENEWAL NORTH
PIER, LLC and EQR-LINCOLN
URBAN RENEWAL JERSEY CITY,
LLC,

    Plaintiffs-Appellants,

       v.

CITY OF JERSEY CITY,

    Defendant-Respondent.

        Argued October 11, 2017 – Decided November 15, 2017

        On appeal from the Superior Court, Appellate
        Division.

        Craig M. White (Baker & Hostetler of the
        Illinois bar, admitted pro hac vice, argued
        the cause for appellant (Baker & Hostetler
        and K & L Gates, attorneys; Craig M. White,
        Anthony P. La Rocco and Benjamin I.
        Rubinstein, on the brief).

        Jeremy A. Farrell and Philip S. Adelman
        argued the cause for respondent (Jeremy A.
        Farrell, Corporation Counsel, City of New
        Jersey, attorney; Mary Ann Murphy, Assistant
        Corporation counsel, on the brief).

PER CURIAM

    The judgment of the Superior Court, Appellate Division is affirmed, substantially for the reasons expressed in the PER CURIAM opinion, reported at ___ N.J. Super. ___ (App. Div. 2017).

1

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON join in this opinion. JUSTICE TIMPONE did not participate.